UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ROSEMARY MAYSONET,

                Plaintiff,

-v-

VALLEY NATIONAL BANK,

                Defendant.

No. 17-cv-3939 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Rosemary Maysonet, proceeding *pro se*, brings this action against her former employer, Valley National Bank ("Defendant" or "the Bank"), alleging that Defendant wrongfully terminated her employment on the basis of her disability, in violation of federal, state, and local civil rights laws. Now before the Court is Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion is GRANTED with respect to Plaintiff's federal claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state and local claims.

I. BACKGROUND

A. Facts[1]

In January 2011, Defendant hired Plaintiff as a bank teller for its Chelsea, Manhattan location. (Def. 56.1 ¶ 3.) During Plaintiff's tenure at the Bank, the Chelsea branch employed two other bank tellers. (*Id.* ¶ 4). Plaintiff was supervised by Wahid Yakub, the Branch Service

---

[1] The following facts are drawn from Defendant's Local Civil Rule 56.1 Statement (Doc. No. 34 ("Def. 56.1")) and Plaintiff's Local Civil Rule 56.1 Counter-Statement (Doc. No. 37 ("Pl. 56.1")). Unless otherwise noted, where only one party's 56.1 Statement or Counter-Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In resolving the motions, the Court also considered Defendant's memorandum of law in support of its motion for summary judgment and attached exhibits (Doc. No. 33 ("Mem.")), Plaintiff's declaration in opposition to the motion for summary judgment and the attached exhibits (Doc. No. 38 ("Opp.")), and Defendant's reply brief (Doc. No. 39 ("Reply")).

Manager. (*Id.* ¶ 6.) The Bank's Attendance and Time Policy states: "Attendance, punctuality, and dependability are essential to the success of all positions. The Company values these qualities and encourages all employees to strive for daily on-time attendance. Attendance is part of all performance evaluations." (*Id.* ¶ 12.) Plaintiff's employment was satisfactory through December 2015. (*Id.* ¶¶ 8, 9.) Beginning in December 2015, however, Plaintiff began to miss work more frequently. (Doc. No. 31, Ex. B. ("Pl. Dep.") at 33:2–5.) Plaintiff attributes these December 2015 absences to medical appointments that were required to treat an ulcer and gastroenteritis. (*Id.* at 32:20–25.) Plaintiff acknowledges, however, that she did not advise the Bank of her medical issues. (*Id.* at 33:17–19.) In January 2016, Plaintiff missed four days of work. (Doc. No. 31, Ex. D.) As a result, on January 27, 2016, the Bank issued a formal disciplinary notice to Plaintiff citing "excessive absence" and "improper notification [to] management." (*Id.*) Yakub met with Plaintiff in person to discuss the disciplinary notice. (Def. 56.1 ¶ 16.) At this meeting, Yakub suggested that Plaintiff look into taking leave under the Family Medical Leave Act ("FMLA"). (Pl. Dep. 35:13–18.) Plaintiff communicated with the Bank's benefit specialist, AnnMaria Wright, several times about the FMLA, but ultimately decided against it. (Pl. Dep. 45:3–11.) On January 29, 2016, Plaintiff told Wright that she was "not interested in applying" for leave under the FMLA. (Doc. No. 31, Ex. K.) Although the Bank persisted and sent FMLA forms to Plaintiff, Plaintiff reached out to Wright on February 17, 2016, stated that she was not interested, and asked to withdraw any FMLA forms that she had filled out. (Doc. No. 31, Ex. N.) Plaintiff agrees that the Bank "offered . . . FMLA" and that she "rejected it." (Pl. Dep. 102:5–7.)

Despite the January 27, 2016 disciplinary notice, Plaintiff missed six more days of work between January 27, 2016 and March 9, 2016. (Def. 56.1 ¶ 18.) The Bank issued a second written warning to Plaintiff on March 9, 2016, which informed her that "[your] attendance continues to be

2

an issue and is putting a strain on other employees." (Doc. No. 31, Ex. F.) The Bank warned that "[i]mmediate improvement . . . must be shown," and threatened further disciplinary action, "including termination of employment" if there was no such improvement. (*Id.*) Plaintiff acknowledges receiving the written warning. (Def. 56.1 ¶ 26.) Yet in April 2016, Plaintiff was absent from work on six more days. (*Id.* ¶ 27.) Significantly, Plaintiff acknowledges that five out of those six absences were unrelated to any medical issues. (*Id.* ¶ 29.) As a result, the Bank issued another written disciplinary notice on April 28, 2016, noting that Plaintiff had exceeded her "allotment for the year" and admonishing that this notice constituted a "[f]inal warning." (Doc. No. 31, Ex. G.) On May 20, 2016, Plaintiff did not show up for work. (Def. 56.1 ¶ 33.) The Bank terminated Plaintiff's employment effective May 23, 2016. (Doc. No. 31, Ex. I).

On June 7, 2016, after being terminated, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"). (Doc. No. 31, Ex. O.) That complaint alleged that Defendant had terminated Plaintiff's employment because of her disability and that Defendant retaliated against Plaintiff for a complaint she had previously filed with the SDHR in December 2015. (*Id.*) After an investigation, the SDHR issued a finding of "No Probable Cause" on December 9, 2016 and dismissed the complaint. (*Id.*) Plaintiff also filed a complaint with the Equal Employment Opportunity Commission, which adopted the findings of the SDHR and issued to Plaintiff a Notice of Right to Sue on February 22, 2017. (Doc. No. 2 ("Compl." or "Complaint") at 10.)

B. Procedural History

The present action was filed *pro se* on May 23, 2017. (Compl. at 1.) Plaintiff brings discrimination claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York

3

City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.*, on the basis that Defendant unlawfully terminated her because of her disability. (Compl. at 4.) Defendant answered the complaint on August 21, 2017. (Doc. No. 6.) After discovery, Defendant moved for summary judgment on May 18, 2018. (Doc. No. 27.) The motion was fully briefed on July 13, 2018. (Doc. No. 39.)

II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable factfinder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation

4

marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is entitled to judgment as a matter of law on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in cases involving allegations of discrimination. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001). Nonetheless, "[s]ummary judgment is appropriate even in discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Thus, "a plaintiff [in a discrimination case] must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

Additionally, because Plaintiff proceeds *pro se* in this matter, the Court must "read h[er] [submissions] 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, "a *pro se* party's 'bald assertion, completely unsupported by evidence' is not sufficient to overcome a motion for summary judgment." *Carmona v. City of New York*, No. 13-cv-3273 (WHP), 2016 WL 4401179, at *2 (S.D.N.Y. Mar.

1, 2016) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

III. DISCUSSION

The Court will first address Plaintiff's federal law claim before turning to her state and city law claims.

A. ADA Claim

Plaintiff brings claims against the Bank for (1) discriminatory discharge and (2) failure to accommodate in violation of the ADA.[2] The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In adjudicating ADA claims, the Court uses the three-part burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires a plaintiff to establish a prima facie case before the "burden of production (but not persuasion) shifts to the defendant to provide a legitimate, nondiscriminatory reason for [its] decision,'" *Pugliese v. Verizon N.Y., Inc.*, No. 05-cv-4005 (KMK), 2008 WL 2882092, at *9 (S.D.N.Y. July 9, 2008) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002)). If the defendant makes a satisfactory showing, the burden shifts back to the plaintiff to prove that the defendant's "articulated, legitimate, nondiscriminatory reasons were pretextual." *Id*.

1. Discriminatory Discharge

To make out a prima facie case of discriminatory discharge under the ADA, Plaintiff must show:

> (1) [the Bank] is covered by the ADA; (2) [Plaintiff] suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [she] was qualified

---

[2] Plaintiff also checked off "retaliation" in her Complaint, but in her deposition, she clarified that "the company retaliated against [her] for taking days off due to medical reasons by terminating [her] employment." (Pl. Dep. 110:16–21.) Thus, her "retaliation" claim simply restates her discriminatory discharge claim, and is not a freestanding claim. (Mem. 12 n.1.)

6

to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered an adverse employment action because of [her] disability or perceived disability.

*Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). Defendant suggests that summary judgment in its favor is appropriate because Plaintiff cannot establish either the third or fourth prongs of the prima facie case. (Mem. at 13.) The Court agrees that Plaintiff has failed to show that she was "qualified to perform the essential functions of [her] job, with or without reasonable accommodation." *Capobianco*, 422 F.3d at 56.

An employee is "qualified" for a position "only if she can perform its essential functions." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009). "Although the term 'essential functions' is not defined by the ADA," it encompasses "the fundamental job duties of the employment position." *Id.* (quoting 29 C.F.R. § 1630.2(n)(1) (2012)). Courts "must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." *Id.*

Courts generally agree that "some degree of regular, predictable attendance is fundamental to most jobs." *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (quoting *Misek-Falkoff v. IBM Corp.*, 854 F. Supp. 215, 227 (S.D.N.Y. 1994)); *see also Pierce v. Highland Falls-Fort Montgomery Central School Dist.*, No. 08-cv-1948 (RKE), 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011) ("[Plaintiff's] persistent absence from work, alone, precludes him from being considered qualified under the ADA."); *Davis v. Bowes*, No. 95-cv-4765 (LAP), 1997 WL 655935, at *16 (S.D.N.Y. Oct. 20, 1997), *aff'd*, No. 97-9496, 1998 WL 477139 (2d Cir. 1998) (unpublished) ("It is axiomatic that an employee who cannot show up for work cannot perform an 'essential function' of her job."). Furthermore, "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," *Brantman v. Fortistar*

*Capital, Inc.*, No. 15-cv-4774 (NSR), 2017 WL 3172864, at *10 (S.D.N.Y. July 22, 2017), only bolsters the conclusion that attendance was an "essential function" of Plaintiff's job.

Here, Defendant "informed [Plaintiff] repeatedly and unambiguously that daily attendance [was] 'imperative.'" *Aquinas*, 940 F. Supp. at 78. Plaintiff was thrice warned in writing that further absences could imperil her employment. (Doc. No. 31, Exs. D, F, G.) The April 28, 2016 warning stated in no uncertain terms that "[a]ttendance, punctuality, and dependability are essential to the success of all positions," and pointed out that "absences may cause issues for colleagues and managers," could "put strain on other employees," and were "disruptive to the normal schedule." (Doc. No. 31 Ex. G.) Similarly, the Bank's Attendance and Time Off Policy states that "[a]ttendance, punctuality, and dependability are essential to the success of all positions. The Company values these qualities and encourages all employees to strive for daily on-time attendance. Attendance is part of all performance evaluations." (Doc. No. 31, Ex. C.; *see Aquinas*, 940 F. Supp. at 78 (citing employee handbook as evidence that attendance was an essential function of plaintiff's job).) Especially given the "deference to an employer's judgment" regarding what qualifies as an "essential function," *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003), there can be no dispute that attendance was an essential component of Plaintiff's job.

The parties agree that Plaintiff repeatedly failed to show up for work, and that she missed at least seventeen days of work in just a five-month span. (Opp. ¶ 11.) Plaintiff therefore has not shown that she could "perform the essential functions of [her] job." *Capobianco*, 422 F.3d at 56. The only remaining issue is whether Plaintiff could have performed the necessary functions of her job with a reasonable accommodation. But as explained below, she cannot make such a showing.

2. Reasonable Accommodation

To make out a prima facie case for failure to accommodate, Plaintiff must show that:

> (1) [she had] a disability under the meaning of the ADA; (2) [the Bank] had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) [the Bank] refused to make such accommodations.

*McBride*, 583 F.3d at 97. As Plaintiff acknowledges in her deposition, her desired accommodation was permission to miss as many days of work as needed. (Pl. Dep. 101:15–25). However, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon*, 332 F.3d at 100. And that is essentially what Plaintiff asks for here – an accommodation allowing her to be absent from work as often as she deemed necessary. Nonetheless, as stated above, attendance is an essential function of Plaintiff's job, and thus accommodating Plaintiff in this manner would exempt her from an essential job requirement. *See Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 771 (E.D.N.Y. 2016) ("Plaintiff's request for as many sick days as needed would excuse her from the essential function of regular and predictable attendance."). Not surprisingly, the ADA "does not afford a disabled individual the right to redefine, much less eliminate, the functions of a job deemed essential by an employer." *Davis v. N.Y.C. Health & Hosps. Corp.*, 508 F. App'x 26, 29 (2d Cir. 2013). As such, Plaintiff has failed to state a prima facie case of failure to accommodate under the ADA because she has failed to establish that "with reasonable accommodation, [she] could perform the essential functions of the job at issue." *McBride*, 583 F.3d at 97. And having failed to establish the existence of a reasonable accommodation that would enable her to perform the essential functions of her job, Plaintiff has not made out a prima facie case of a failure to accommodate claim under the ADA.

### B. State and Local Claims

Plaintiff also brings claims under the New York State Human Rights Law, (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, (the

"NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq.*, on the basis of disability discrimination.

Having granted summary judgment in favor of Defendant on Plaintiff's sole federal claim, the Court now considers whether to exercise supplemental jurisdiction over these remaining state and city law claims. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). As the Second Circuit has instructed, where all federal claims have been dismissed before trial, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This is true even when the case has proceeded through discovery and on to summary judgment. *See, e.g., Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Ziming Shen v. City of New York*, 725 F. App'x 7, 16 (2d Cir. 2018); *Gonzalez v. Micelli Chocolate Mold Co.*, 514 F. App'x 11, 12 (2d Cir. 2013).

The balance of factors in this case strongly points towards declining to exercise supplemental jurisdiction. The NYCHRL contains different elements than its federal and state counterparts. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims."). And because Defendant asserts an election-of-remedies defense as to both the NYSHRL and NYCHRL claims (*see* Mem. 20), this Court's resolution of Plaintiff's federal ADA claim would not inform its decision as to her state and city claims. *See Benjamin v. New York City Dep't of Health*, 144 F. App'x 140, 143 (2d Cir. 2005) (finding exercise of supplemental

jurisdiction was abuse of discretion where "[t]he precise supplemental issue addressed . . . – whether [plaintiff's] judicial complaint . . . trigger[ed] state and city election of remedies provisions – required no discovery and was conceptually unrelated to the federal issues decided"). Accordingly, Plaintiff's NYSHRL and NYCHRL claims are best addressed by state courts, and the Court thus declines to exercise jurisdiction over those claims.

## IV. CONCLUSION

For the foregoing reasons IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's ADA claim. IT IS FURTHER ORDERED THAT Plaintiff's NYSHRL and NYCHRL claims are DISMISSED without prejudice for lack of jurisdiction. Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Plaintiff may not proceed *in forma pauperis*.

The Clerk of Court is respectfully requested to terminate the motion pending at docket number 27, to mail a copy of this Opinion and Order to Plaintiff, and to close this case.

SO ORDERED.

Dated: March 25, 2019
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

11